UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICOLE RAMOS,

    Plaintiff

    -against-

PILLER, INC.

    Defendant.

**Plaintiff's Statement Pursuant to Local Rule 56.1**

O7 Civ. 4047 (SCR)

Plaintiff Nicole Ramos makes the following statement of material facts that are in dispute:

1. On February 2, 2006, plaintiff learned that she was pregnant with her second child. (Ex.4- Ramos Dep. 31:22-24).

2. She began to tell her friends and family that she was pregnant. (Id. 32:15-18).

3. On February 9, 2006, Nuelle was fired and Haber was offered the job of Financial Controller, which he accepted. (Ex.5- Haber Dep. 33:22-34:17).

4. Haber spent the weekend working on a reorganization of the Accounting Department. (Id. 34:18-22). On February 12, 2006, he first met with the Finance staff and then presented to Piller President Michael Barron a document titled "Concerns and Improvement Opportunities." (Ex. 1, Ex.5- Haber Dep. 34:24-35:2).

5. This plan contemplated hiring a person to replace Haber, an additional new hire and included additional responsibilities for plaintiff:

    "**Accounts Receivable, Billing** - Nicole, (*sic*) will be cross-trained to handle Inventory, Fixed Assets, Credit and Collection and Accounts Payable, Project Accounting. The communication with the project managers and sales departments must be improved. This position will participate in the project review meetings to eliminate shipping and invoicing problems."

6. Barron told Haber he could not hire an additional staff member. (Ex.5- Haber Dep. 35:3-

5).

7. At no time did Haber advise plaintiff that her job assignments or career at Piller, Inc. would be negatively affected without a degree in Accounting. (Ex.3- Ramos Dec. ¶3).

8. Instead, during a visit to Piller, Inc. in or about February 10, 2006, Bernard Watson, president of Langley Holdings, praised plaintiff's work and said that Piller was lucky to have her. (Ex.4- Ramos Dep. 101:10-14).

9. In addition, Watson suggested that plaintiff might take some accounting courses that Piller would pay for. (Ex.3- Ramos Dec. ¶ 4). Plaintiff agreed and began to research appropriate courses for the summer semester. (Id. ¶5).

10. In mid-February, plaintiff told Haber that she was pregnant. (Ex.4- Ramos Dep. 36:5-8).

11. She also told her Finance co-worker Sarah Stopyra and Barron's Executive Assistant Ethel Crow. (Id. 33:2-35:19).

12. Plaintiff also tried to tell Sandy Piazza that she was pregnant because she believed that Piazza handled the Human Resources function for Piller, Inc. (Id. 38:14-39:23).

13. However, Piazza refused to discuss this with plaintiff, claiming that she was a tax accountant, not Human Resources. (Id.)

14. Stopyra testified that she heard plaintiff try to tell Piazza that she was pregnant and that she had at other times heard Piazza deny any responsibility for defendant's Human Resources function. (Ex. 6-Stopyra Dep. 32:22-33:14).

15. After plaintiff told Haber she was pregnant, his conduct toward plaintiff changed markedly. (Ex.3- Ramos Dec. ¶6). While she had been previously included in projects and sales meetings, plaintiff was thereafter not invited to or notified of such meetings. (Id.¶7). Haber also stopped speaking to her. (Id.¶8). The previous plan to relocate her

office did not take place, although other offices were relocated. When plaintiff tried to discuss this disparity with Haber, he did not respond. (Ex.4- Ramos Dep. 52:10-24).

16. At no time did Haber tell plaintiff that he was dissatisfied with her work. He also never told plaintiff that he needed an employee with a degree in accounting. (Plaintiff's Dec. ¶9).

17. By his own account, Haber first began trying to contact Angelica Hoffman, a former Piller, Inc. employee, in late February 2006. (Ex.5- Haber Dep 35).

18. Haber's employment with Piller began just as Hoffman was leaving Piller's employ so he knew Hoffman only a couple of days before she left at the end of June 2005. (Ex.5- Haber Dep. 33:2-12).

19. Hoffman left her job then because she was uncomfortable with the organization and the new Solomon software. (Ex.5- Haber Dep. 36:13-18).

20. On March 22, 2006, plaintiff was hospitalized for dehydration related to her pregnancy. (Ex.4- Ramos Dep. 58:4-24).

21. She called Haber and told him that she was being hospitalized. (Id.) Haber hung up on her. (Plaintiff's Dec. ¶10).

22. When plaintiff returned to work, she told Haber that the baby was fine and she was feeling better. (Ex.4- Ramos Dep. 59:7-20). Haber merely told her to give her doctor's note to Piazza. (Id.).

23. In late March, plaintiff began to prepare a letter to Piller, Inc. President Michael Barron to complain about Haber's conduct toward her. On April 7, she completed a first draft, which she e-mailed to her sister. (Ex. 3-Ramos Dec. ¶11, Ex.2). However, she never had the opportunity to send her internal complaint. (Id.).

24.     At his deposition, Haber claimed that he fired plaintiff because he needed to employ a person with an accounting degree, which plaintiff did not possess. (Ex.5- Haber Dep. 71:22-72:3). However, he admitted that Hoffman did not actually replace plaintiff, and that she actually filled his own former position.(Id. 72:4-11).

Dated: January 29, 2009
       Chester, New York

                                            Respectfully submitted,

                                            S/_____
                                            HELEN G. ULLRICH (HU 6597)

                                            BERGSTEIN & ULLRICH, LLP
                                            15 Railroad Avenue
                                            Chester, New York 10918
                                            (845) 469-1277
                                            Counsel for plaintiff