**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------X
NICOLE RAMOS,                          :
                                       :
                    Plaintiff,         :
                                       :
          -against-                    :        **Opinion & Order**
                                       :        07 Civ. 4047 (SCR)(JFK)
PILLER, INC.,                          :
                                       :
                    Defendant.   :
--------------------------------X

APPEARANCES

        FOR PLAINTIFF, NICOLE RAMOS:

                Helen G. Ullrich, Esq.
                Stephen Bergstein, Esq.
                Bergstein & Ullrich, LLP
                15 Railroad Avenue
                Chester, New York 10918

        FOR DEFENDANT, PILLER, INC.:

                Brian M. Culnan, Esq.
                Justin W. Gray, Esq.
                Iseman, Cunningham, Riester & Hyde, LLP
                2649 South Road
                Poughkeepsie, New York 12601

**JOHN F. KEENAN, United States District Judge:**

        Plaintiff Nicole Ramos ("Ramos") brings this suit alleging

gender discrimination based on pregnancy against Defendant

Piller, Inc. ("Piller"), her former employer, pursuant to Title

VII of the Civil Rights Act of 1964 ("Title VII"), as amended,

42 U.S.C. § 2000e <u>et seq</u>. and the New York Human Rights Law

("the HRL"), New York Executive Law § 296.  Piller has moved[1]
for summary judgment on grounds that Ramos has failed to
establish a prima facie case of discrimination under Title VII,
and further contends that even if Ramos has established a prima
facie case of discrimination, she has failed to rebut the
legitimate, non-discriminatory reason proffered by the Defendant
for the termination of Plaintiff's employment.  For the reasons
stated below, Defendant's motion for summary judgment is denied.

## BACKGROUND

All facts are undisputed unless otherwise indicated.
Piller produces high performance power protection systems and
converters, with its principal New York office located in
Middletown, New York.  Piller hired Ramos as a full-time
employee under the title "Accounts Receivable" in June 2002.  In
this capacity, according to Ramos, she worked as an accountant
and projects administrator and was also responsible for accounts
receivable.  Ramos earned a bachelor's degree in American
Studies from the University of Maryland but had no accounting
background.

In February 2003, while working for Piller, Ramos learned
that she was pregnant with her first child.  She took maternity

---

[1] This motion is before me with the consent of the Honorable
Stephen Robinson, before whom the motion was originally filed.
See Rule 13 of the Local Rules for the Division of Business
among District Judges.

leave without incident. Ramos claims to have learned she was pregnant with her second child on February 2, 2006, and began to tell friends and family shortly thereafter.

On February 9, 2006, Piller promoted one Michael Haber ("Haber") to the position of Financial Controller and the head of the Finance Department. The weekend immediately following his promotion, Haber prepared an initial plan to, among other things, reorganize Piller's Finance Department. Haber met with members of the Finance Department on February 13, 2006, and on or around that date presented to Piller President Michael Barron ("Barron") a document entitled "Concerns and Improvement Opportunities," dated February 12, 2006. This initial plan contemplated hiring additional staff and proposed the following description for Ramos' responsibilities in the restructured Finance Department:

> **Accounts Receivable, Billing –** Nicole, [sic] will be cross-trained to handle Inventory, Fixed Assets, Credit and Collection and Accounts Payable, Project Accounting. The communication with the project managers and sales departments must be improved. This position will participate in the project review meetings to eliminate shipping and invoicing problems.

See "Plan of Reorganization," Defendant's Appendix p. 34. Ultimately, Barron rejected Haber's request to hire additional personnel.

In mid-February 2006, Ramos informed her Finance Department co-worker, Sarah Stopyra, and Barron's Executive Assistant,

Ethel Crow, that she was pregnant with her second child. According to Ramos and Stopyra, Ramos tried to inform Sandy Piazza of her pregnancy, believing Piazza handled the Human Resources function for Piller, but was rebuffed by Piazza, who claimed to be solely a tax accountant and who denied any responsibility for Piller's Human Resources function. Ramos also claims she informed Haber that she was pregnant in mid-February. Both parties agree that Haber submitted his initial plan to reorganize the Finance Department without knowledge of Ramos' pregnancy.

The parties also agree that during a visit to Piller in February 2006, Bernard Watson, President of Langley Holdings, PLC — Piller's parent company — praised Ramos' work. On the same date, Watson suggested to Ramos that she might take some accounting courses which, according to Ramos, would be paid for by the company. Ramos dates this event on or about February 10, 2006 — before Ramos claims to have disclosed her second pregnancy to Haber and her co-workers. Piller, however, places this event on February 20, 2006 — after the date of the alleged disclosures. At no time during her employment did Haber advise Ramos that her job assignments or career at Piller would be negatively affected without her obtaining an accounting degree.

According to Ramos, sometime after disclosing her pregnancy to Haber, his conduct toward her changed dramatically. Ramos

claims she stopped being invited to and notified of projects and sales meetings in which she had previously been included. She also claims that Haber stopped speaking to her, and did not relocate her office as she claims was promised to her by Haber's predecessor. Ramos alleges that after calling Haber to inform him that she had been hospitalized for dehydration related to her pregnancy, Haber hung up the phone on her.

Haber began attempts to contact Angelica Hoffman ("Hoffman") the week of February 20, 2006 at the earliest. At the time of these communications, Hoffman held a bachelor's degree in accounting, had previously worked for Piller in the Finance Department for six years, and had over ten years of accounting experience. On March 24, 2006, Piller made a formal offer of employment to Hoffman to become a Financial Accountant in Piller's Finance Department. Hoffman accepted Piller's offer of employment shortly after March 24, 2006. Hoffman was not pregnant when Piller hired her.[2] Piller terminated Ramos' employment on April 7, 2006.

## THE INSTANT ACTION

In June 2006, Ramos filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging wrongful termination of her employment based on her pregnancy.

---

[2] Although the record is silent on this matter, the parties do not dispute this fact.

On or about April 23, 2007, Ramos received a Notice of Right to Sue.

On May 23, 2007, Ramos commenced the instant action in this Court for unlawful termination of her employment for discriminatory reasons related to her pregnancy in violation of Title VII and the HRL.

<u>DISCUSSION</u>

**I. General Standards Applicable**

**A. Summary Judgment**

Summary judgment is warranted when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." <u>Beyer v. County of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008) (citing <u>Guilbert v. Gardner</u>, 480 F.3d 140, 145 (2d Cir. 2007)). Thus, when determining whether such issues do exist, the court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003).

Summary judgment is appropriate when the non-moving party has no evidentiary support for an essential element on which it bears the burden of proof. Celotex, 477 U.S. at 322-23.

The United States Supreme Court has stated that "trial courts should not 'treat discrimination differently from other ultimate questions of fact.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524 (1993)). As in any other case, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.' . . . She must come forth with evidence sufficient to allow a reasonable jury to still find in her favor." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original). In order to withstand a motion for summary judgment, the plaintiff in a discrimination suit must offer "concrete particulars" to substantiate the claim. Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) cert. denied, 474 U.S. 829 (1985).

The Court exercises caution when determining whether to grant summary judgment to an employer in a discrimination case where, as here, the employer's intent is at issue.  <u>Holcomb v. Iona Coll.</u>, 521 F.3d 130, 137 (2d Cir. 2008).  Since "direct evidence of [discriminating] intent will only rarely be available, . . . 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'"  <u>Id.</u>, 521 F.3d at 137 (quoting <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)).  Nevertheless, a plaintiff in a discrimination case "must provide more than conclusory allegations" to defeat a motion for summary judgment.  <u>Holcomb</u>, 521 F.3d at 137.  Piller's summary judgment motion will be analyzed in accordance with these principles.

### B. Title VII and the New York Human Rights Law

The Pregnancy Discrimination Act ("the PDA"), 42 U.S.C. § 2000e(k), amends Title VII, providing, in pertinent part, that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work . . . ."  42 U.S.C. § 2000e(k).  The elements of an employment discrimination claim under the HRL and Title VII are "virtually identical"; therefore, the analysis

8

of Ramos' Title VII claim is equally applicable to her claim under the HRL.   Flores v. Buy Buy Baby, Inc., 118 F. Supp. 2d 425, 429-30 (S.D.N.Y. 2000) (quoting Lacoparra v. Pergament Home Ctrs., Inc., 982 F. Supp. 213, 225 (S.D.N.Y. 1997)); see also Tomka v. Seiler Corp., 66 F.3d 1295, 1305 n.4 (2d Cir. 1995).

Because an alleged violation of pregnancy discrimination arises under Title VII, the Court applies the three-step burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).   Under this framework, the employee first bears the burden of establishing a prima facie case of discrimination.   Second, if the Court determines that the employee has succeeded in establishing a prima facie case, a presumption that the employer unlawfully discriminated against the employee is raised, shifting the burden to the employer "to articulate some legitimate nondiscriminatory reason for the employee's rejection."   Id. at 802.   Third, if the employer carries this burden, the burden shifts back to the employee to demonstrate that the legitimate reasons offered by the employer were a pretext for discrimination.   See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).   While this burden of production may shift, the plaintiff always bears the burden of proving intentional discrimination.   See id. at 253; Hicks, 509 U.S. at 507.

**II. Analysis**

**A. Step One:  Plaintiff's Prima Facie Case**

A plaintiff can establish a prima facie case of pregnancy discrimination under Title VII by showing, by a preponderance of the evidence, that:  "(1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee." Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995), vacated and remanded on other grounds, 166 F.3d 422 (1999) (citations omitted).  A plaintiff may also satisfy the fourth element of a prima facie case "by showing that the discharge occurred in circumstances giving rise to an inference of unlawful discrimination." Id.

It is undisputed that Ramos satisfies the first and third elements necessary to establish a prima facie case for pregnancy discrimination — she falls into the protected class (pregnant women) and she suffered an adverse employment action (i.e., she was terminated).  Piller contends, however, that Ramos failed to establish a prima facie case — first, because she did not hold the requisite qualifications for the accounting position that ultimately went to Hoffman, and second, because the circumstances of the termination do not support an inference of pregnancy discrimination or, in the alternative, because her position was eliminated and did not remain open.

10

In addressing both points, Ramos has produced evidence to support her contentions that (1) she was qualified to continue working for Piller in the same position for which Hoffman was hired, and (2) the temporal proximity between her disclosing that she was pregnant and her termination raises an inference of pregnancy discrimination.  The disputed circumstances concerning Plaintiff's termination creates a material issue of credibility.

Given the "minimal" showing necessary to establish a prima facie case under McDonnell Douglas, Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001), an increasing number of courts in this Circuit presume that plaintiffs have sufficiently presented a prima facie case in discrimination suits.  See, e.g., Pellegrino v. County of Orange, 313 F. Supp. 2d 303, 315 (S.D.N.Y. 2004); Devlin v. Transp. Commc'ns Int'l. Union, Nos. 95 Civ. 0742 (JFK), 95 Civ. 10838 (JFK), 2002 WL 413919, at *7 (S.D.N.Y. Mar. 14, 2002); Lanahan v. Mut. Life Ins. Co., 15 F. Supp. 2d 381, 383 (S.D.N.Y. 1998); Lapsley v. Columbia Univ.-Coll. of Physicians & Surgeons, 999 F. Supp. 506, 514-15 (S.D.N.Y. 1998).  Moreover, the Supreme Court's decision in Reeves "eliminates any potential distinction between evidence plaintiff uses to meet its prima facie burden of showing 'circumstances giving rise to an inference of discrimination,' and evidence plaintiff uses to meet its burden of showing that defendants' stated reason for their firings is a pretext for

discrimination." Gorley v. Metro North Commuter R.R., No. 99
Civ. 3240 (NRB), 2000 WL 1876909, at *6 (S.D.N.Y. Dec. 22, 2000)
(construing Reeves, 530 U.S. at 143 (2000)).   Therefore, the
Court presumes, without deciding, that Plaintiff met her burden
and will analyze Plaintiff's Title VII claim under the
assumption that she has established a prima facie case of
pregnancy discrimination, despite Piller's argument to the
contrary.

**B. Step Two:  Defendant's Non-Discriminatory Reason for**
**Terminating Plaintiff's Employment**

Under the McDonnell Douglas framework, after the court
assumes the existence of a prima facie case, the burden shifts
to the defendant to offer a legitimate, nondiscriminatory basis
for terminating the plaintiff's employment. See McDonnell
Douglas, 411 U.S. at 802-05.   The defendant bears the burden of
producing evidence "which, taken as true, would permit the
conclusion that there was a nondiscriminatory reason for the
adverse action." Hicks, 509 U.S. at 509.   "This burden is one
of production, not persuasion; it 'can have no credibility
assessment.'" Reeves, 530 U.S. at 141 (quoting Hicks, 509 U.S.
at 509 (1993)).   Here, Piller asserts that its reason for
terminating Ramos was that Haber wished to upgrade the job
requirements of an existing position in the Finance Department,
with the new upgraded position requiring a bachelor's degree in

accounting.   Piller claims that Haber only took this course of
action after his superiors denied his initial plan to hire
additional personnel.   This reason is satisfactory evidence to
support a nondiscriminatory basis for Piller's conduct and
sufficient to rebut the presumption of pregnancy discrimination
raised by Plaintiff's prima facie case.

###    C.   Step Three:   Pretext for Pregnancy Discrimination

To establish that Piller's proffered reason for terminating
Ramos was pretextual, Ramos must demonstrate, "either through
direct, statistical or circumstantial evidence" that Piller's
reason for terminating her was false and that it was more likely
that Piller terminated her because she became pregnant.   Gallo,
22 F.3d at 1225 (citations omitted).   At this stage, after the
defendant has met its burden of production, "the factual inquiry
proceeds to a new level of specificity."   Burdine, 450 U.S. at
255.   Nevertheless, "a plaintiff's prima facie case, combined
with sufficient evidence to find that the employer's asserted
justification is false, may permit the trier of fact to conclude
that the employer unlawfully discriminated."   Reeves, 530 U.S.
at 135.

To demonstrate pretext, Ramos relied, as she was entitled
to do, on the same evidence she used to support her prima facie
case.   See id.   Specifically, Ramos relied on:   (1) Haber's
description of Ramos' role in the reorganized company and a plan

to cross-train her in new areas, as found in "Concerns and Improvement Opportunities"; (2) her allegations that Haber's conduct toward her changed after she disclosed her pregnancy to him, in that (a) Haber stopped speaking to her in general, and (b) Haber hung up the phone on her after she called to inform him that she had been hospitalized for dehydration related to her pregnancy; (3) she was no longer invited to or notified of projects and sales meetings as she had been prior to her disclosure; (4) after revealing her pregnancy, other employees' offices were relocated but hers was not, despite a promise that had been made to her by Haber's predecessor; (5) the undisputed fact that neither Haber nor anyone else at Piller expressed to Ramos the need for an employee with an accounting degree; (6) her claim that she received no warning or expression of dissatisfaction of her level or quality of work prior to her termination; (7) the undisputed fact that Watson actually praised Ramos' work and, according to Ramos, suggested she take accounting courses paid for by Piller; (8) the temporal proximity between when Ramos claimed she revealed her pregnancy to Haber and the decision to terminate her employment; and (9) Ramos' claim that Hoffman was hired to perform substantially the same functions as Ramos.

After viewing all the evidence submitted by Ramos, the Court concludes that the Plaintiff has raised a genuine issue of

material fact as to whether Piller's proffered reason for terminating Ramos' employment is a pretext and as to whether it is more likely that Piller terminated Ramos because she became pregnant.

First, a jury could find that Piller's alleged creation of an upgraded position was pretext for terminating Ramos' employment. Ramos cast doubt over Piller's claim that her position actually was eliminated and that a new position had been created. Piller denied Plaintiff's contention that the description of Ramos' functions, as found in Haber's initial reorganization plan, constituted additional responsibilities. A jury could conclude that this claim conflicts with Piller's own contention that Hoffman filled an entirely new position, because the responsibilities of both jobs — Ramos' proposed position in Haber's initial plan and Hoffman's position as Financial Accountant — are arguably similar. Furthermore, based on Haber's seemingly sudden change of heart — from wanting to cross-train Ramos before she allegedly disclosed her pregnancy, to pursuing Hoffman and subsequently terminating Ramos' employment following her alleged disclosure — a jury could find that Ramos' position was never actually eliminated, but rather, that charge was used by Piller as a pretext to terminate Ramos because of her pregnancy.

Second, a jury could find that requiring a four-year bachelor's degree in accounting was a pretext for terminating Ramos' employment. Ramos provided evidence that Haber contemplated training Ramos to handle additional responsibilities, many of which appear to be encompassed in Hoffman's Financial Accountant position, yet not once did Haber state that an accounting degree was necessary to handle these additional duties. Piller's contention that upgrading the educational standards of the Finance Department was always a part of Haber's reorganization plan finds no evidentiary support in the actual written plan, as initially proposed. Even if a jury believed the degree was necessary for the position, it could still find that Piller used it as a pretext given the additional circumstantial evidence. According to Ramos' account, before she disclosed her pregnancy to Haber and other Piller employees, Watson suggested Ramos take some additional accounting classes. Shortly after disclosing her pregnancy, Ramos was terminated, allegedly in part due to the fact that she did not possess an accounting degree. A jury might reasonably conclude that the only factor that changed in such a short period of time was the revelation that Ramos had become pregnant.

In sum, the evidence submitted by Ramos is sufficient for a reasonable jury to conclude that Piller's proffered reason for terminating Ramos is a pretext for pregnancy discrimination.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED.

**SO ORDERED.**

**Dated:**          **New York, NY**

            October 2 1  , 2009


John F. Keenan

**John F. Keenan**

**United States District Judge**

17